## COMMONWEALTH *vs.* NASHUA AND LOWELL RAILROAD CORPO-RATION.

A railroad, constructed over a highway in such a manner as to obstruct public travel, is liable to indictment as a nuisance, notwithstanding *St.* 1849, *c.* 222, § 4, conferring on county commissioners " the original jurisdiction of all questions touching obstructions to turnpikes, highways or town ways, caused by the construction or operation of railroads."

Where selectmen, besides requiring other alterations to be made by a railroad corporation in a way over which their railroad passed, pursuant to Rev. Sts. *c.* 39, § 67, ordered a draw to be made in the railroad for the accommodation of public travel on the way, it was held that the railroad corporation, building their road, without such a draw, so as to obstruct public travel, were liable to indictment for a nuisance.

INDICTMENT for a nuisance by obstructing a highway in Tyngsborough, leading from Tyngsborough across the Merrimack River to Pelham (N. H.) and called and known as the Ferry Road.

At the trial in the court of common pleas, the following facts were admitted: The defendants, incorporated by *St.* 1836, *c.* 249, in the course of the construction of their road in 1837, built a bridge over said highway; but on the 1st of July 1837, before building the bridge, made the following application to the selectmen of Tyngsborough: " Your memorialists beg leave to represent, that in the convenient location of the Nashua and Lowell Railroad it is necessary to lower the present travelled road way at the ferry about four feet, for the purpose of allowing the travel to pass more conveniently under the bridge of said railroad. The length of said bridge we also wish you to direct." The selectmen, in answer to this application, on the 6th of July 1837, granted their consent to the lowering of the ferry road about two feet, and gave directions as to the mode of building the road and bridge, " with a sufficient draw in said bridge to accommodate the public travel; the said corporation to provide for raising said draw whenever required by the height of the carriage or load in passing."

The bridge was built by the defendants in compliance with the directions of the selectmen, except that no draw was made in the bridge. The railroad and bridge have continued and been used from 1837 to the present time, as they were then

ronstructed. And the construction of the bridge, in the manner in which it was built, constitutes the nuisance complained of. The relative position of the highway, the railroad and the river are sufficiently stated in the opinion.

*Hoar*, J. instructed the jury, that a structure erected by the defendants across a highway at such a height as would prevent the passage of carriages with loads of a proper and reasonable height, such as are usually carried upon public highways, would be a nuisance, for the erection and maintenance of which they might be indicted and convicted, unless they could show an authority or justification for so erecting or continuing it; and that the facts above stated would not furnish such authority or justification.

The jury found the defendants guilty, and the judge reported the case, pursuant to Rev. Sts. *c.* 138, § 12, for the purpose of presenting to this court the question whether the defendants had authority to build the bridge in the manner stated; and also the question, whether the court of common pleas had jurisdiction of the case proved under this indictment.

This case was argued at the last October term.

*R. Choate*, (Attorney General,) for the Commonwealth. 1. The bridge of the defendants, constituting an obstruction of the highway, is forbidden by statute, and indictable as a nuisance. Rev. Sts. *c.* 39, §§ 66, 67. 1 Russ. on Crimes, (7th Amer. ed.) 49, 50, 347. *The King* v. *Sainsbury*, 4 T. R. 457. *The King* v. *Morris*, 1 B. & Ad. 441. *Springfield* v. *Connecticut River Railroad*, 4 Cush. 63.

2. The proceedings of the selectmen afford no excuse. (1.) Selectmen have no power to authorize the obstruction of a highway by a railroad. Rev. Sts. *c.* 39, § 67. (2.) The railroad corpora tion did not apply to them to authorize the erection and main tenance of a bridge, but the lowering of a highway. (3.) The selectmen assume to authorize the maintenance of a drawbridge only; and the defendants have built a bridge without a draw.

3. The courts of common law are not ousted of their juris diction to indict, try and punish such a nuisance, by *St.* 1849, *c.* 222, § 4, conferring on county commissioners "the original

jurisdiction of all questions touching obstructions to turnpikes, highways or townways, caused by the construction or operation of railroads." The object of that statute was to transfer to county commissioners the jurisdiction of selectmen. Common law jurisdiction is not to be ousted but by express terms or necessary implication. *Crittenden* v. *Wilson,* 5 Cow. 165. Com. Dig. Action upon Statute, C.

*B. F. Butler,* for the defendants. 1. The selectmen are made judges, by statute, of what alterations are required in a highway, over or under which a railroad passes, subject to an appeal to the county commissioners; but have no authority over the construction of the railroad, which is left exclusively in the hands of the corporation. The alterations in the way, required by the selectmen, were made by the defendants, and have been acquiesced in by the town since 1837, without any application to the county commissioners. And the provision in the order of the selectmen, requiring a draw in the railroad bridge, was beyond their power, and simply void. Rev. Sts. *c.* 39, §§ 67, 68, 72. *Parks* v. *Boston,* 8 Pick. 225. *Parker* v. *Boston & Maine Railroad,* 3 Cush. 117–119.

2. By *St.* 1849, *c.* 222, §§ 4, 5, original jurisdiction of all questions, touching obstructions of highways by railroads, is transferred to county commissioners, and power is given to this court to enforce the judgments of that tribunal. The intention of the legislature seems to have been so to adjust all contests between two public ways; instead of leaving such obstructions to the less practicable remedy of indictment or abatement as a nuisance.

SHAW, C. J. We cannot doubt that the obstruction of a highway or town way, in any form, is *prima facie* a public nuisance; and that the proper redress for the public is to be sought by indictment. Railroad companies are prohibited from making the roads so as to obstruct public ways, except in a particular mode, by the permission of the selectmen. Rev. Sts. *c.* 39, §§ 66, 67. The only justification relied on in the present case is, that that part of the license or permission of the selectmen, which required a draw in the railroad bridge, to

be opened when necessary for the passage of high loads and carriages, was void; that it was beyond the authority of selectmen to prescribe, and the defendants were not bound to comply with it; and that, having complied with the residue of the order, they are justified.

This presents a new and somewhat difficult question. There is no express limit, provided by statute, to the authority of selectmen and county commissioners, as to the expedients they may prescribe, to overcome difficulties, and reconcile the use of the highway and the railroad with each other. We can imagine cases, where the position of the highway and the railroad towards each other, and the vicinity of waters, rocks and precipices, are so peculiar, that some new expedient must be resorted to, within the scope of invention and experience, to effect this mutual accommodation. In the earlier days of railroads, many expensive and artificial means were applied, to overcome difficulties apparently insuperable, such as inclined planes and stationary engines, and lifts, in the nature of locks on canals, from one level to another.

. In the present case, it appears, from an examination of the localities on the plan, that the railroad, the public road and the river have a relation to each other, quite peculiar, and all affecting the question of mutual accommodation. The railroad, for a considerable distance, passes near the bank of the river on a level, at a height just sufficient to be above the reach of the water, at its highest stages. If the highway were carried by a bridge over the railroad, the height would be so great and the distance so short, from the top of the bridge to the margin of the river, that it would be quite too steep for use, if not absolutely impassable. If carried under the railroad, it would fill with water from the river, and be useless. To carry the railroad over the way would require an embankment beginning at a great distance each side, to get the required slope and height, and this would be attended with very great expense. We are not, however, prepared to say that a draw in the railroad bridge was necessary, or was the only means which could be suggested in order to secure the use of the road. But it does appear that

the selectmen, who had a right, in the first instance, to prescribe the alterations which should be made, thought the draw a suitable and feasible expedient to secure the free and full use of the public way, without impeding the passage of the railroad. And we are of opinion that it is not necessary, in the present case, for this court to decide upon the abstract question, whether selectmen may or may not require such an expedient as a draw in the railroad. We are of opinion that the making and providing for the use of such a draw, on which the license or permission was granted to the corporation to cross the railroad with their bridge, was a condition, and that it was a condition precedent, and that they could not legally claim the benefit of the license, and refuse to comply with the condition on which it was granted. If they intended to insist on the principle on which they now defend, that the selectmen had no authority to prescribe such a condition as they did, they should have appealed to the county commissioners, who had authority, by Rev. Sts. *c.* 39, § 68, to decide what alterations should be made, and to correct the errors of the selectmen, if they had fallen into any. But we think they cannot justify under an act of the selectmen, as a license, whilst they refuse to comply with an essential condition in the grant. Without a compliance with the condition, the grant itself was inoperative and void, and cannot afford justification to a measure, which, without a valid license, was a public nuisance.

*Judgment on the verdict.*